Tom Leatherbury here on behalf of the Software AG defendants. I'll address three issues time-permitting. First is preemption. Second is the alternative argument of lack of subject matter jurisdiction. And third is the federal contracting regulations. Your Honors, we presented to the court a bench book. The first three tabs concern the preemption and the record, and the fourth contains the federal contracting regulations. So on preemption and lack of subject matter jurisdiction, Your Honors, it starts with the court's prior opinion. May I ask, this was given to the other side? Yesterday, Your Honor, yes. And every single thing in this is in the record already? Yes, Your Honor, and there are less to the record than the federal contracting regulations. Yes, Your Honor. So we start with the court's prior opinion back in 2012. In that opinion, this court did not hold that any of GlobeRanger's claims was preempted. It did not affirm any of the district court's grant of Software AG's 12B6 motion. That's clear from the opinion. It's clear from the judgment and mandate of the court. The court did not hold at that motion to dismiss stage that prong one of the preemption test was satisfied as to any claim. In the second paragraph of the discussion section of the opinion, at page 705, the court held first that at least some of GlobeRanger's claims were not preempted, and second, that the case could remain in federal court at the motion to dismiss stage as GlobeRanger's conversion claim was likely preempted. At page 706 . . . The FedRock principle is jurisdictions determined at the time of removal. Right. Or in a case that's initially filed in federal court at the time of filing. And there's been a motion to remand that the district court had denied, and this GlobeRanger 1 circuit opinion affirmed that, the denial of the motion to remand, and sends it back to . . . And this really goes more to your second argument, but you're saying it affirms that motion to remand, sends it back to the trial court, and yet there's actually no finding that there was jurisdiction at that time. Yes, Your Honor. Because the court used the word likely and plausibly. The court was at the 12B6 stage and couldn't decide fact issues, so it made no finding . . . But jurisdictions always determine based on the pleading. If jurisdictions determined at the time of filing or in a removed case at the time of removal, when's there ever going to have been jurisdiction discovery at the time of filing? No. Your Honor, I completely agree that the jurisdiction is determined as of the time of removal. That's why in our papers we've gone through and we've analyzed each of the individual claims of GlobeRanger in the original petition in state court that was removed to federal court. Why did you need discovery if it's determined on the pleading at the time of removal? Your Honor, that's what this court instructed the district court to do, was to determine whether or not there was jurisdiction based on a more developed record. It left the application of its modest conclusions to the district court to determine on the basis of a more developed record. The trial court concededly did not make that finding, Your Honor, at any time until the 50B motion was filed after judgment. The case went to trial. The other claims were dropped. There was no more developed record made. The other claims were dropped or dismissed. The case went to trial on the trade secret misappropriation claim and conspiracy claim, and those are the only ones on which there's a more developed record. So Tab 1 shows the timeline, Your Honor, and we do go back and analyze each of the original claims based on the record existing at the time in order to show that as an alternative, if there is no preemption of the trade secret misappropriation claim, there's no subject matter jurisdiction. This court's prior opinion, as I said, did not determine that any of the claims satisfied Prong 1 of the copyright preemption test. The scope of Globe Ranger's claims did not change until trial. You can look at the pretrial order, and that's in the bench book as well at Tab 2, I believe, Your Honor, and they are still claiming elements outside the subject matter of copyright that were elements that this court found were outside the subject matter of copyright. So it changed all at trial. Let me talk about, Your Honor, preemption, and before I turn to preemption, I do want to say we're absolutely mindful and aware of the resources that have been devoted to this case by the parties in the court, and our alternative argument of lack of subject matter jurisdiction is based on the fact that federal courts are, of course, courts of limited jurisdiction, and the court has the obligation to determine its jurisdiction throughout the case. On preemption, because of time, I'll probably leave a number of these arguments to the briefs. On the additional, whether there's an additional element . . . Right. You say all these other circuit cases are distinguishable because I'm summarizing, but they involve the confidential relationship that was breached. By the . . . Why doesn't this involve, while the defendant themselves were not under a confidentiality obligation, the argument is that they received information knowing that the people giving that information to them were under a confidentiality obligation. Why isn't that sufficient to take this beyond a copyright claim? Right, Your Honor. Well, I think several answers. You look at consistent application of the Fifth Circuit's cases from the ZZ Top case through Alcatel to the court's recent case in Speer Marketing, and the knowledge element that the court alluded to, the constructive notice element, the knowledge element has never been held to make anything qualitatively different in terms of the copyright preemption test. I'll also refer the court back to a principle that appears in the Fifth Circuit's jurisprudence consistently, and that is that you look at the actions of the defendant. All trade secret claims are not created equal for purposes of preemption. Other courts have recognized this, such as the Long Court. We cited this court from Pennsylvania and Altai in the Second Circuit, which applied Texas law. Many courts have distinguished between cases in which the defendant breaches a duty of confidentiality and cases where someone else breaches a duty of confidentiality, and the gravamen of the complaint against the other defendant is copying use of the material that was disclosed by somebody else. When a defendant breaches a duty of confidentiality, those cases are generally not preempted. When the gravamen of the complaint is copying and use of information disclosed by another under a duty of confidentiality, those cases are held to be preempted generally. Here, Globe-Ranger, of course, relies quite a bit on this court's decision in Computer Management Associates v. DiCastro of the Louisiana Unfair Trade Practices Act. Several things about that, Your Honor. First, in DiCastro, the defendant DiCastro did have a duty of confidentiality to the plaintiff in that case. That would stand in the cases of that one kind. Also, the court's analysis in that case was one sentence. It's not as extensive an analysis as, say, in Spear Marketing, which is a very analogous case to this case because in Spear Marketing, the claimant issue was a Texas Theft Liability Act claim where a trade secret was involved, theft was involved, impropriety was involved. And so we suggest to the court that under Spear Marketing and under these other Fifth Circuit precedents that we've discussed in our briefs that the claim is preempted. On the subject matter jurisdiction point, Your Honor, alternatively, as I mentioned a number of reasons in the outset why this court did not definitively find a jurisdiction over any of Globe Ranger's claims, another reason why that is the case is the court remanded, taking the court at the face of the opinion, for additional discovery, a more developed record, almost like a 12B1 sort of inquiry. If the court had affirmed the dismissal of any portion of any of Globe Ranger's claims, there would have been no need to remand for further discovery or a more developed record because the question before the court would have been, is there supplemental jurisdiction? Should the court maintain supplemental jurisdiction? And those words are in the statute and Carnegie Mellon, for example, are nowhere in the court's opinion. So, Your Honors, at least one of Globe Ranger's claims must be preempted. And the only possible claim, going back to my original point, Your Honor, is the trade secret misappropriation claim. Well, you, if you're right that Globe Ranger 1 said, well, we're not making any jurisdictional determination, send it back, why couldn't we now look at the conversion claim? I mean, even though it was later dismissed, it's a fundamental rule that just because a claim, if a claim does give a hook for federal jurisdiction, if it's dismissed, it doesn't affect the overall jurisdiction of the case. Thank you, Your Honor. So, there's no authority, Your Honor, though, that allows you to take a record that's developed at trial and lay it over a claim that was dropped way back when. The claim was either within federal jurisdiction or not within federal jurisdiction when it was in the case. And there was no determination made before it was dropped. There could be no determination made before it was dropped because nothing satisfied prong one under the court's analysis in the prior Globe Ranger opinion. So, I don't know any authority, Your Honor, that allows you to post dismissal, go back and apply a new record to the allegations that were present back then. So, Your Honors, Globe Ranger's position, of course, has changed pretty dramatically on this jurisdictional issue. We included some things in the bench book, quotations from the record on that. At the 50A stage, it said there was supplemental jurisdiction without really identifying any federal jurisdictional predicate. At the 50B stage, it relied on the Giles case. We got the transcript of the Giles hearing in front of Judge Lake. We brought it to the court's attention as an addendum to our brief in this case. And it shows very clearly that the claim in Giles was found to be a federal claim and a preempted claim before it was dismissed. And now the Globe Ranger is trying to do what the court alluded to, although take it a little step further, which is to say, no, this court definitively found jurisdiction in the first opinion. So, Your Honor, there are additional reasons why none of the other claims can serve as federal jurisdictional hooks, but I do want to open briefly on the federal contracting regulations unless the court has other questions on that. It seems to me that there's a lot of tension between the fact-bound preemption discussion in Alcatel and the holding in Globe Ranger 1 about complete preemption. There's just a lot of tension there to me. Yes, Your Honor. That's not an unfriendly question, I guess. No, this whole idea – I appreciate that, Your Honor. The whole issue of – well, first of all, in Alcatel, there was no argument made that the trade secret misappropriation claim was preempted. There was an argument that the unfair competition claim by misappropriation was preempted, and the court found it was preempted. This idea of partial preemption or some things are preempted and some things are not or part of a claim could be preempted, we also see in SPEAR marketing. That's just not what the court did, humbly, respectfully, on the first opinion. I think to do otherwise other than take the court's opinion at its face value really would run afoul of the law and the case. I'm not sure whether I answered the court's question. Assuming – no, I don't mean you disrespect the court's opinion either. Assuming that it's a little bit rough around the edges, the law of the case is going to apply, not the first case controls. Do you agree with that? Yes. We're in this case with this mandate regardless of whether it's true to every other older precedent. Absolutely, Your Honor. I do agree with that. That's why I think it's so important to look at the relief that was granted in the first appeal which was reversed in remand for further proceedings and the judgment mandate which we pulled and looked at again yesterday where no part of the dismissal on 12B6 preemption grounds was affirmed. I'll come back to the government contracting regulations at the court. Yes. Thank you. Thank you. May it please the court. Affiliate committee representing Globe Ranger. Let me start by talking about the preemption question. This court should join the ten other circuit courts that have addressed this issue and find that trade secret misappropriation is not completely preempted by the Copyright Act. Just like the district court here, these courts have found that the breach of duty, whether the duty was owed by the defendant or by a third party, is the extra element that makes a trade secret claim quantitatively different. Now, Judge Costa, you asked about this privity issue, right? That was specifically rejected in Alcatel and in Altai. It does not require that this confidential relationship be between the plaintiff and the defendant. And the reason is if you look at the restatement section 757, restatement first of torts, which is where these concepts arise, they talk about four different types of theories, one of which is this theory of you have a third party that owes a confidential relationship. And you obtain it either by directly inducing that party or getting that third party to give it to you. That is an independent tort that's actionable. That theory is also now in the restatement of unfair competition, section 40B. The reason why the breach of duty is important here is the rights that it protects. That's what all of these cases, all of these circuit court decisions are talking about. They're talking about the nature of the right. And the nature of the right when you have an unfair – when you have a claim for a trade secret misappropriation is the duty. It's the duty that's owed. And those duties are created by virtue of that tort. In Daboob and Alcatel, this court recognized that elements such as invasion of personal rights and breach of a fiduciary duty would render those claims different in kind from copyright. In Takino, this court said that the contract promise was such an element. And in computer management, this court said that fraud, misrepresentation, or other unethical conduct constitutes an extra element. So this court's finding that breach of a duty would be consistent with that authority as well as the 10 other circuits. It would also be consistent with the legislative history. If you look at the legislative history of Section 301, in 1978, both houses  would remain unaffected as long as the causes of action contained elements such as breach of trust or confidentiality. That's what you have here, a breach. Can we join the 10 other circuits given language and perhaps holding of Globe Ranger 1? No. You can join them, and here's why. The language in Globe Ranger 1 is very simple. They found that the conversion claim was preempted and, therefore, jurisdiction was found and sent the case back to the trial court. The last paragraph in Globe Ranger I would submit is dicta. It says complete preemption doctrine applies. Exactly. As to conversion, these 10 other circuits are talking about a different tort. Conversion is analogous to theft, basically. I'm sorry? Conversion is analogous to just straight theft, and we already held in spear marketing that the Texas theft statute is preempted. So it's really conversion and the Texas theft statute. Conversion is basically taking of somebody else's property, and when that property involves intangible rights, intellectual property, that has been held to be preempted. And that was the claim that was before that Globe Ranger 1 found was preempted, upon which it based jurisdiction. This notion that there was no jurisdiction found by Globe Ranger 1 is impossible. There is some language that's difficult to decipher. Let me ask you this hypothetical on that jurisdictional question. Because the normal rule, I mean normally I would think it did find jurisdiction because you look at it at the time of removal. But let me give you this hypothetical. Let's say you have a case, the pleading says Texas plaintiff is suing a New York defendant. In state courts, the New York defendant removes, great, I can get to federal court on diversity grounds. Pleading, it's clear as day there's federal jurisdiction diversity. Then you get to trial, and it comes out at trial that the plaintiff has never stepped foot in Texas in her life. She's actually always been in New York. Just there was a mistake that was made. So the facts make clear there's no jurisdiction, even though the pleading showed there was jurisdiction. And that scenario at trial, when that fact comes out, would the court have to say, you know what, I never had jurisdiction over the case at all, dismissed or remanded to state court? Let me answer your question this way. With regard to removal jurisdiction, the rule is time of filing. And that time of filing rule looks at the original petition at the time of removal. Here, that's all you have to do. The district court did it. Globe Ranger 1 did it. And this court can do it again. Even if, as in my hypothetical, later evidence that gets developed shows clearly that there was never jurisdiction? Right. That is what Speer holds, that the subsequent events do not divest court of subject matter jurisdiction. And that's consistent with not just Speer, but also this court's decision in Brown. So . . . But this isn't . . . my hypothetical isn't that the person moved after the case was filed. That, I know, doesn't change things. But it shows that the facts as alleged were actually wrong. And I think that's what they're saying is that even if there was complete preemption on the pleading as the case developed, as your theories changed, it showed there was no preemption.  I don't . . . You don't think that . . . I do not hear them say that there was not . . . that the conversion claim was not preempted. They are not saying that. Let's be clear. But they're saying you never proved it was preempted, essentially. There was no facts to ever develop that it was preempted. That's what I read. The Globe Ranger 1 says . . . was just saying you need to look at this closer district court, get some evidence, and see if it's preempted. And you guys never performed that task. There is no authority for the concept that you go and get discovery to figure out whether you have subject matter jurisdiction. Except Globe Ranger 1. In dicta, in the final paragraph . . . Well, you can on 12b-1 get discovery. Without any authority cited. But, I mean, that's 12b . . . Normally, a Rule 12 motion, you don't get discovery. 12b-1, you actually can ask for discovery. You can attach evidence, unlike most Rule 12. So, I mean, a court can consider evidence in a subject matter jurisdiction inquiry, can't it? I'm sure they can. In this case, what the Rule says is you look at it at the time of filing. And you look at the original petition. Then why did Globe Ranger 1 say the remainder of the copyright preemption analysis would occur on remand? Why is there an analysis occurring on remand if it's supposed to be at the time of filing, it doesn't matter what the true facts are? Because no one explained to the court the time of filing Rule. It doesn't matter, though. Even if the court's wrong, why doesn't the law of the case with regard to this case say that that had to be done? Assume it's a total outlier. It said that that was supposed to be done here. I think that that last paragraph is dicta. It is inconsistent. It's instructions.  It is not an instruction to the court. Is it an invitation to Globe Ranger to go and figure out if it has tangible property that was misappropriated, was converted? Well, the very last instruction says the defendants have argued enough of a basis for preemption on Globe Ranger's conversion claim to stay in federal court. Those are the last words of the opinion. That is the very last words. So what they are finding, the only holding in Globe Ranger 1 is that there is subject matter jurisdiction based on the conversion of intangible property and that that claim was preempted. Those are the two holdings. And Judge Southwick, who wrote Globe Ranger, sat on the Spear court, and he would not be reversing himself when in Spear he says that what the district court did there was exactly correct. Why isn't the conduct you allege here analogous to the knowledge element in Spear's? I'm sorry? Why isn't the conduct alleged analogous to the knowledge element that was dispositive as to preemption in Spear? In Spear, the claim was a TTLA claim. Here, the claim is a trade secret misappropriation, two separate claims. In Spear, what you basically have for a TTLA claim is you have mens rea. Okay? That's what they're talking about. It's just mens rea. Here, you have this extra element, which is the breach of duty, which is not found in the TTLA claim. So the whole concept of notice is irrelevant to a trade secret misappropriation case. The element that you focus on, the nature of the claim, again, the right that you're trying to protect is the duty that's owed to the plaintiff by virtue of these confidential relationships. That's the focus of the claim. And the courts in the Ten Circuits say that in various ways. Some of them say you look at the nature of it. You look at, you know, what's the right being protected? On the jurisdiction question, Your Honor, this one's easy. There was subject matter jurisdiction based on the original petition, based on the conversion claim. I don't see how you can read Globe Ranger 1 any other way. And, in fact, the Sphere Court cites Globe Ranger for that exact proposition. Are you going to talk about the damages? Sure. But let me answer one other question that was asked. You know, why can't you look at subject matter jurisdiction now, this concept that, oh, the case has been tried already? Sphere holds that you can look at it at any time, including now, which is what they did in Sphere. So I would say that Sphere is the authority to go look at in terms of whether this court can, at this point in time, go and look at the original petition and decide for itself if there was subject matter jurisdiction at the time of Now, damages. Globe Rangers sought unjust enrichment damages. There are several measures that can be used in a trade secret misappropriation case. The restatement of unjust, I think Section 40 of unfair competition talks about the different types, 45, talks about the different types of damages that you can get awarded. One of those measures is development costs avoided by the defendant through their misappropriation. That's the measure that we used here. There's two complaints about damages, Your Honor, and I'm not sure which one you want me to address. One is the court's abuse of discretion in allowing Van Uden to testify, and the other has to do with the alleged excessiveness of the award. I'm concerned about whether under LCORE and MGE UPS systems, Globe Ranger bore the burden to isolate development costs allocable to the misappropriated trade secrets from other costs. Similarly, where there's saved development costs and is approximated by the plaintiff's actual development costs, the plaintiff bears the burden to segregate costs allocated to the misappropriated trade secret from other development costs. That's what I'm concerned. It may be waived, but it seems to me that the costs are not done properly, and there are cases that say that . . . they've reversed things when they were done this way. The university computing case is the authority on this issue, on this particular type . . . Okay, I'm sorry. On this particular type of damage model. It says not to use development costs as the exclusive measure of damages. University computing says that, and that's . . . University computing is bad for you, not good for you, unfortunately. I would disagree. University computing says there are different measures that you can use, and of those different measures, this is one of them. This court's BOSS Act decision said the same thing, and, in fact, it talks about this measure. This measure is basically to say that what you saved in development costs, I can use as a proxy what I actually spent to develop it, because that's the measure that you're using. Did you segregate? Yes, we segregated. Was the segregated cost allocable to the misappropriated trade secret from the other development costs? We segregated those directly related to the property that was misappropriated, yes. From that, we did not claim a trade secret in, because there was evidence at trial, essentially, that they spent $30 million, and of that, some of it we did not attribute to them. Of the components that were misappropriated, it was $19.6 million. We did segregate in that way. We also segregated those costs that had nothing to do with our trade secrets, that we weren't claiming a trade secret in. We segregated those costs as well. Okay. You think you did adequate segregation under LCOR's requirements? We did adequate segregation in terms of what our trade secrets were, and in terms of what had been misappropriated. I thought it included – okay, go ahead. I'm sorry. Sure. I have to check the record on that. Do you want to get into the – you have a few minutes left – the regulations? Yes, sir. I guess before you get into the specifics of the regulations, which I want to hear about, but is part of your argument that because some or all of what you're claiming to be a trade secret was developed before the Navy contract, that the regulations don't apply? I'm trying to figure – is that part of what you're saying? Let me try to put some context here, because it's very confusing. The Navy and Globe Ranger did business in two different ways. The first was the Navy licensed the software, and the Navy licensed the software through what's called a GSA schedule, Government Services Administration schedule. There was, at trial, no dispute. Absolutely not. Not even Software AG's expert disputed this, that that software was commercial computer software. That's 3.2 million lines of code. That was undisputed. That's commercial computer software. The second way in which – But that's where they contend even commercial computer software that they fund is something the Navy then can use. They did not fund that, and it was undisputed that they did not fund that. That's the second portion. It's the second portion that we're going to talk about. So 99% of this, it was undisputed at trial. It was commercial computer software. We're talking about 12,000 lines of code, which is about 1% of what was delivered. Now, the question is, is it minor modifications, which puts it in the They want to say it's technical data. Well, let me tell you why it's not technical data. Number one, because the government's, the Navy's corporate representatives said it was not. She was asked, is it technical data? Her answer, no. Second, as to the subcontracts, first of all, as I said, there were two ways in which the Navy and Lloyd Brangert did business. Under the second way, there was these subcontracts, and these subcontracts covered a bunch of different services, only one of which was to configure and customize, which is the code. The contract that they referred to was modified, and it was modified in its Plaintiff's Exhibit 13A, and it was modified, and the modification says, you look at this SAL of November 27, 2007, and you look at the proposal of January 2, 2008, and if you look at those documents, they say, quote, and by the way, those two documents are Plaintiff's Exhibit 13 and Plaintiff's Exhibit 13, 13B and 13C. They both say, quote, the derivative works developed as part of this SAL are deemed part of the Glombrager solution, which remains the intellectual property of Glombrager, and client agrees that Glombrager will own all and any modifications or customizations to the iMotion platform, whether created by Glombrager or jointly created with the client. So all of the evidence at trial, other than the defendant's expert, said this was minor modifications, and even the government's own documents, the subcontracts that they point you to, they say this was Glombrager property and therefore falls into the bucket of commercial computer software. If the court doesn't have any questions, I'll... First on the preemption point, one response and one thing I did not have a chance to mention in my opening, I think it's very important in looking at the defendant's conduct and whether it's qualitatively different than in conduct under the Copyright Act, is the jury did fail to find any conspiracy, so any acts by any other defendants cannot be imputed to software AG. On the damages point, Your Honor, I refer the court to page 53 of our opening brief where we highlighted the lack of segregation, the lack of flaws in Mr. Van Uden's testimony, and the record sites are there in terms of what he did not take into account, software AG's preexisting RFID capabilities. He didn't consider whether there was any use. He didn't review the difference between the two companies' cost structures, and he didn't exclude Glombranger's R&D costs in developing non-proprietary elements in the solution. Is that preserved for us to... Yes, Your Honor. It was raised in the Rule 50 motions, and it was adequately briefed in our brief. We cited the court to the standards and cases governing reliability, and we gave the court factual... But at the time that it was raised at trial... Yes, Your Honor, I believe it was. I can certainly give... I can certainly go back and look at the...  I do, Your Honor. ...from the trial on. I do, Your Honor. I'll stay for the trial, so I'm going on memory in my review of the record, Your Honor, but I do believe so, yes. On the federal regulations, the federal regulations are important to software AG's request for reversal and remand for a new trial in two different ways. One is the jury charge error that we briefed for the court, and that jury charge error also affects the jury's finding of misappropriation, particularly any improper acquisition or constructive notice of impropriety. The court's refusal to charge... Specifically, we're talking about the court's refusal to charge the jury on categories other than commercial computer software, specifically technical data and non-commercial computer software, and the court's failure to charge the jury on the importance of government funding and the government's rights in any portion of the materials developed with government funding under the appropriate federal regulations. The trial court wrongly held on... Does your argument depend on... This may be why you asked for the instruction on technical data. Does your argument depend on it being technical data? It's certainly heavily influenced by that, Your Honor. Let me give you a couple of examples of why, from the record, why technical data is important. GlobeRanger's prime contract and subcontracts, the exhibits that the court requested in advance of argument, all use Clause 70.13 to shorthand it, and 70.13 is only used when the contractor is going to deliver things other than and in addition to commercial computer software, such as technical data. And so we have from the very contracts themselves that there will be technical data delivered. And Ms. Cleaver, the Navy contracting officer, confirmed the Navy and its contractors' rights to give software AG what they delivered to software AG. Our expert, Lieutenant Colonel Adams, said that at least parts of the Navy RFID solution were technical data and were not computer software. That's at pages 5361, 5400, 5402 of the record on appeal. And under the pertinent regulations at tab 4, Your Honor, the Navy and the government does not lose any rights in technical data, which it paid to have developed, even if the resulting product later becomes commercial computer software or even if that technical data underlies commercial computer software or noncommercial computer software. The government always has rights to that data. The contract that counsel quoted was one amendment to one subcontract, not the prime contract and not the other subcontract. So unfortunately there are a lot of contracts at issue, and the regulations are a question of law for the court to determine or at least mixed questions of fact and law. But there was at least a factual issue, Your Honor, in the testimony at trial about whether or not this was technical data or noncommercial computer software because in an area that's as complex as this, the jury certainly should have been charged more extensively on the government's rights to government-funded portions of the project and also to technical data and noncommercial computer software. Goldranger even admitted at trial that parts of the Navy RFID solution were not commercial computer software, those lines of code, the 24,000 lines of code for which the Navy paid almost $3 million. So that's from Goldranger's own witnesses. A lot of the problem here I think goes back to one of the arguments you make that maybe a lack of specificity about what the actual trade secret was. If there were more specificity on that, a lot of these other issues would then be easier to figure out. They're inextricably related, Your Honor. It dominoed on top of each other. I mean it built on top of each other. There was no specificity, and then the regulations were complex. There were conflicts in the evidence about what was technical data and what was commercial computer software, evidence on both sides. And the court's summary judgment ruling, which the court adhered to throughout the case, was that if it was commercial computer software, software AG or the Navy had no rights whatsoever in any of it, technical data, commercial computer software, whatever. And that's just not an appropriate reading of the regulations in 7013 that were before the court. On jurisdiction, we certainly are saying there was no finding of preemption of the conversion claim. We certainly are saying that plausibly and likely we are not enough under the authorities we've cited to the court. I see my time's up. Thank you, counsel.